Municipal Court of Canton.

THE STATE OF OHIO V. JOE CHICK.

Decided December 5, 1933.

*Donald W. Krug,* assistant city solicitor, for plaintiff.
*Leroy J. Contie,* for defendant.

SNYDER, J.

In his case, an affidavit was filed against the defendant, charging him with carrying a concealed weapon, to-wit: a revolver, contrary of the statute of Ohio.

To this affidavit, the defendant pleaded "not guilty," and previous to the hearing, filed a motion to suppress the evidence obtained under an alleged unlawful search of his person.

Upon the hearing of this motion, the policeman who made the arrest, testified that he had no search warrant; that none of the other officers with him presented a search warrant to the defendant, that as far as he knew no affidavit for a search warrant was made, and that no search warrant was issued for the search of the defendant.

The officer further testified as follows:

Q. So, as a matter of fact, you went down and searched Joe Chick with the purpose of finding some evidence on him on which to make an arrest?

A. Yes.

Q. Did any of the officers who was with you at the time, have a search warrant?

A. No, I don't know whether the booze squad did or not, but I know I didn't.

Q. In any event, no officer presented a search warrant to Joe Chick, prior to the time he was searched?

A. Not at that time, no; no· warrant handed to him.

Q. Just describe this place?

A. It is a confectionery and they play cards in there; there was about eight or nine fellows sitting around the table playing cards, and one fellow standing over the counter buying a piece of candy; we searched everybody in the place.

Q. Have any talk with Joe here?

A. No, we didn't talk to him.

The defendant claims that he was unlawfully searched and that any evidence discovered in that search should be suppressed. The evidence shows that the officer had no probable cause or reasonable grounds to believe that the defendant was committing a violation of law; on the contrary, his testimony specifically negatives such fact.

The fourth amendment to the Constitution of The United States reads as follows:

"The right of the people to be secure in their persons, houses, papers and effects against unlawful searches and seizures, shall not be violated, and no warrant shall issue but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized."

The bill of rights in the Constitution of Ohio, Article 1, Section 14, contains a similar principle,

"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

On April 1, 1929, the legislature of Ohio, adopted a code, codifying the state's laws of criminal procedure. The then existing chapter of the General Code relating to "Search Warrants," was repealed and a newly enacted code was adopted. Section 13430-3 General Code, states when and by whom a search warrant may be issued, and reads thus:

"A warrant for search shall not be issued until there is

filed with the judge or magistrate, an affidavit particularly describing the house or place to be searched, the person to be seized, if any, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, and he shall state the facts upon which such belief is based. The judge or magistrate shall have authority to demand other and further evidence before issuing such warrant."

In the case of *Nicholas* v. *City of Cleveland*, 125 O. S. 474, the court had under consideration the sufficiency of an affidavit for search, and Judge Jones, speaking for the Supreme Court on page 486 said,

"The court is of the opinion that a search can be made in this state only by complying with the amended statute (now Section 13430-3, General Code)."

In the instant case, no attempt was made to comply with statute relating to the obtaining of a search warrant.

The legality of the search must be determined by the facts as they were known to the officer at the moment the search was instituted, and can never be justified by what has been found. A search that is unlawful when it begins it not made lawful when it ends by the discovery and seizure of a concealed weapon on a person.

No general exploratory search of a person and the seizure of effects on his person can ever be justified either with or without a search warrant.

It has been declared again and again that a man's house is his castle and that he can defend it against all intruders and invaders.

The Earl of Chatham so beautifully described it when he wrote:

"The poorest man may in his cottage bid defiance to all the forces of the crown; it may be frail, its roof may shake, the wind may blow through it; the storm may enter, the rain may enter; but the King of England cannot enter; all his forces dare not cross the threshold of the ruined tenement."

A man's house may be his castle, but his person is his temple and shall not be defiled. This protection reaches to all alike, whether accused of crime or not, and the duty

of giving to it force and effect is obligatory upon all entrusted with the enforcement of the laws. The tendency of those who execute the criminal laws to obtain conviction by means of unlawful searches and seizures, should find no sanction in the judgments and the decrees of the courts, to which the people of all conditions have a right to appeal for the maintenance of fundamental rights.

An unrestricted right to search a person and arrest, at the pleasure of any officer could but create a situation wholly intolerable to the citizens and in direct violation of the provisions and guaranties secured to the citizens in Article 14 of the Constitution of Ohio.

In the case of *Tapp* v. *City of Cincinnati*, 43 O. A. 257, the court had under consideration the same principle involved in the instant case. Tapp was arrested by a police officer without a search warrant, searched, and race horse slips were found in his possession. Strenuous objection was made by defendant's counsel to the introduction of these slips in evidence, and an exception was taken when they were permitted in evidence. Defendant was convicted by the Municipal Court, which was affirmed by the Common Pleas Court.

The Court of Appeals reversed the Municipal and Common Pleas Courts. Judge Ross speaking for the court said:

"While upon the face of the matter is seems absurd that the known guilty should escape by reason of the illegality incident to the obtaining of the evidence warranting their conviction, it is manifestly necessary that the rights of innocent law-abiding citizens shall be safeguarded from unwarranted interference, and that such rights shall be upheld and protected, even though it is to the profit of the offender."

The Supreme Court of Ohio, dismissed the petition in error saying there was no debatable constitutional question involved. (124 O. S. 666).

The defendant has an indefeasible, fundamental and constitutional right of personal security, personal lierty, and private property, where that right has never been forfeited by his conviction of some public offense, and it is the duty of the courts to preserve that right.

The motion to suppress is granted.